AO106 (Rev. 12/03) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

_____ SOUTHERN _____ DISTRICT OF _____ CALIFORNIA _____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

1029 2ND STREET
CALEXICO, CA 92231

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Case Number: '07 MJ 8993

I, ENRIQUE TORREGROSA, being duly sworn depose and say:

I am a(n) Special Agent with U. S. Immigration & Customs Enforcement and have reason to believe
      Official Title

that ☐ on the person of or ☑ on the property or premises known as (name, description and/or location)

REFER TO ATTACHMENT A

in the _____ SOUTHERN _____ District of _____ CALIFORNIA _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

REFER TO ATTACHMENT B

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

evidence of the commission of a criminal offense and/or instrumentalities and fruits of the criminal offense.

concerning a violation of Title _____ 8 _____ United States code, Section(s) 1324

The facts to support a finding of probable cause are as follows:

REFER TO ATTACHED AFFIDAVIT OF ICE SPECIAL AGENT ENRIQUE TORREGROSA

FILED
DEC 18 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Continued on the attached sheet and made a part hereof: ☑ Yes ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

12-18-07 @ 8:47 a.m.          at   EL CENTRO               CALIFORNIA
Date                                City                   State

Peter C. Lewis            U.S. Magistrate Judge          _____
Name of Judge             Title of Judge                 Signature of Judge

## ATTACHMENT A

### Description of the Property and Premises to be Searched

1029 2nd Street, Calexico, California 92231

The premises located at 1029 2nd Street, Calexico, California, 92331, including the residence, all rooms, attics, basements, garages, storage areas, safes, briefcases, containers, trash areas, trash containers, surrounding grounds, vehicles and outer buildings of any kind located thereon. The residence is described as follows:

A white stucco one story single-family detached residence with brown tile trim. The doors of the residences face the East toward Andrade Street. The numbers "1029" are affixed and visible in large black numbers on the southernmost wall of the house visible to 2nd Street in Calexico, California. The house is located on the northern side of 2nd Street and Andrade Street.

As well as all vehicles located within the property boundaries, and parked on the street that have been determined to be associated to the residence.

## ATTACHMENT B

## Description of Items to Be Seized

### 1029 2nd Street, Calexico, California 92231

1. Israel Aquino-Andrade, three year old, and Dalila Aquino-Andrade, two year old, and information constituting evidence of the commission of a criminal offense, and information that is and has been used as the means for committing a criminal offense. The specific criminal offense involved is violation of Title 8, United States Code, Sections 1324 Aiding and Abating an Illegal Alien. The items to be seized include the items described below:

   a. Passports, altered or fraudulent identification and immigration documents, various forms of United States Government evidence of fraudulent documentation; passports and U. S. Government documentation evidencing alienage; correspondence, domestic and foreign, evidencing alien-smuggling arrangements; airline/airfare tickets; names of arrangers of alien smuggling; lists containing names of smuggled aliens along with their destination and fees paid or to be paid; registrations and titles of vehicles used in the smuggling and transporting of illegal aliens; financial records and bank statements recording the receipt of money from smuggling, cellular telephones and chargers, telephone tolls of calls, documents and receipts evidencing temporary lodging of illegal aliens; documents showing possession, dominion, and/or control of said premises, including canceled mail, keys, rent receipts, utility bills, deeds, leases and photographs; property of smuggled aliens in the form of wallets, purses, suitcases, tote bags, and clothing; checks, money-orders, and money order receipts as well as U.S. and foreign currency;

   b. Articles of personal property evidencing the existence of a conspiracy to harbor and transport illegal aliens, including personal telephone/address books, notebooks/notepads, and papers and documents consisting of lists of names, telephone numbers and/or direct connect numbers;

   c. Documents and articles showing the identity of persons occupying, possessing, or controlling the residence to be searched;

   d. Maps, travel itineraries, addresses, or destinations;

e.  Cellular telephones, pagers, and portable radios used by GARCIA and AQUINO and other conspirators to further the trafficking of illegal aliens; and

f.  Proceeds of alien smuggling to include: cash, bank deposit receipts, bank statements, and other financial records evidencing money related to the transporting of illegal aliens into the United States from Mexico by GARCIA and AQUINO or other conspirators.

# AFFIDAVIT

**STATE OF CALIFORNIA )**
                      )
**COUNTY OF SAN DIEGO )**

I, Enrique Torregrosa, Special Agent, UNITED STATES Immigration and Customs Enforcement, being duly sworn, hereby depose and say:

## I. EXPERIENCE AND TRAINING

1. I am a Special Agent with United States Immigration and Customs Enforcement Agency ("ICE") and have served in that capacity since August 6, 2006. I am currently assigned to the Office of the Assistant Special Agent in Charge, Office of Investigations, El Centro, California. In the course of my duties, I investigate, apprehend, and prepare cases for prosecution against persons bringing undocumented illegal aliens into the United States and transporting and harboring undocumented illegal aliens within the United States.

2. Additionally, I have received on-the-job experience and training relative to detecting evidence of smuggling of illegal aliens into the United States, the transportation of illegal aliens within the United States, and related criminal offenses. This training includes working and consulting with senior agents from both ICE and other federal law enforcement agencies, interviewing suspected and convicted alien smugglers, and conducting surveillance of activities related to alien smuggling. I have used this training in the performance of my duties as a criminal investigator.

3. I have investigated numerous alien smuggling organizations during the course of my employment with ICE. I have been involved in investigations that have

1

resulted in several alien smuggling arrests. I have also participated in the execution of numerous federal search warrants and federal arrest warrants, the majority of which were related to drug smuggling and alien smuggling activity.

4. It is my experience, and the experience of many law enforcement officers with whom I have worked and conversed, that the smuggling of aliens as well as fraud and misuse of visas, production and transfer of false U.S. identification documents and possession of the same, generates many types of evidence. Examples include passports, altered or fraudulent identification and immigration documents, various forms of United States Government evidence of fraudulent documentation; passports and U.S. Government documentation evidencing alienage; correspondence, domestic and foreign, evidencing alien-smuggling arrangements; airline/airfare tickets; names of arrangers of alien smuggling; lists containing names of smuggled aliens along with their destination and fees paid or to be paid; registrations and titles of vehicles used in the smuggling and transporting of illegal aliens; financial records and bank statements recording the receipt of money from smuggling, cellular telephones and chargers, telephone tolls of calls, documents and receipts evidencing temporary lodging of illegal aliens; documents showing possession, dominion, and/or control of said premises, including canceled mail, keys, rent receipts, utility bills, deeds, leases and photographs; property of smuggled aliens in the form of wallets, purses, suitcases, tote bags, and clothing; checks, money-orders, and money order receipts as well as U.S. and foreign currency.

    a. Alien smugglers use cellular telephones, pagers and portable radios to maintain communications with co-conspirators to further their criminal activities.

    b. Alien smugglers will meet in their residences to discuss the transportation of illegal aliens into and within the United States.

      c.   Alien smugglers possess on their person and/or in their residences, notebooks, address books, or ledgers listing other identities/phone numbers of conspirators involved in the trafficking of illegal aliens.

      d.   Alien smugglers rent multiple residences, basement, other facilities for warehousing, staging of illegal aliens to be moved to onward locations within the United States.

      e.   Alien smugglers pay individuals to rent residences, basement, other facilities to accommodate the warehousing, or staging of aliens that are to be moved to onward locations within the United States.

      f.   Alien traffickers may have concealed or hidden rooms in or beneath such residences, or basements in which illegal aliens are hidden before they can be transported to their final destination.

## II.   PURPOSE OF THIS AFFIDAVIT

5.   This affidavit is made in support of an application for a warrant to search the following location: 1029 2nd Street in Calexico, California, 92231 ("TARGET RESIDENCE"). The TARGET RESIDENCE is described in more detail in Attachment A, attached hereto, and incorporated herein by reference.

6.   I make this affidavit based on personal knowledge derived from my participation in this investigation. Because this affidavit is offered for the limited purpose of establishing probable cause for the issuance of this search warrant, it does not contain all the information that the government possesses relative to this investigation.

III. <u>SCHEDULE OF EVIDENCE TO BE SEIZED</u>

7. A list of specific items to be seized from the TARGET RESIDENCE is attached hereto, and incorporated herein, as Attachment B. Based on my training and experience, as detailed above, and on information obtained in the course of this investigation, as detailed below, I believe there is probable cause to believe that the items listed in Attachment B will be found at the TARGET RESIDENCE described in Attachment A.

IV. <u>PROBABLE CAUSE TO SEARCH THE TARGET RESIDENCE</u>

8. On December 11, 2007, at approximately 4:00 p.m., a Confidential Source ("CS") reported to me that subjects known to him/her as Dalila Garcia-Carranza ("GARCIA") and Israel Aquino-Andrade ("AQUINO") were smuggling illegal aliens into the United States from Mexico and harboring them in the TARGET RESIDENCE. The CS explained that GARCIA is AQUINO's mother and that both GARCIA and AQUINO reside in the TARGET RESIDENE.

9. The CS specifically reported that GARCIA smuggled AQUINO's two children, named Israel Aquino-Andrade and Dalila Aquino-Andrade (collectively the "children"), from Mexicali, Mexico into the United States on September 2, 2007. The CS also reported that the children are currently being harbored at the TARGET RESIDENCE.

10. The CS identified the children's mother as GONZALEZ and stated she is a Mexican citizen who resides in Mexicali, Mexico. The CS also informed your affiant the following phone number belongs to GONZALEZ: 0115211503226.

4

11. On December 12, 2007, Agent Torregrosa called the phone number and spoke to a person who identified herself as GONZALEZ. GONZALEZ told your affiant her children were abducted by GARCIA on September 2, 2007. Specifically, GONZALEZ explained that on September 2, 2007, GARCIA, the children's grandmother, arrived at her residence in Mexicali, Mexico, and stated she was taking the children shopping. However, GARCIA and the children never returned to GONZALEZ's residence.

12. On December 12, 2007, at approximately 1000 hours, Agent Torregrosa obtained Mexican birth certificates of Israel Aquino-Andrade is a three year-old boy and Dalila Aquino-Andrade is a two year-old girl, from Yolanda GONZALEZ. Further, the children's parents, are identified in the Mexican birth certificates as Israel AQUINO and Yolanda Gonzalez both Mexican citizens.

13. GONZALEZ stated to your affiant that later in the evening of September 2, 2007, AQUINO contacted GONZALEZ by telephone and stated to her the children were with him at the TARGET RESIDENCE.

14. GONZALEZ stated to your affiant that she reported the abduction of her children to Mexican authorities soon after they were taken into the United States.

15. On December 14, 2007, at approximately 8:00 a.m., your affiant spoke with Jorge Pantoja Abuilar, an agent with Ministerio Publico de la Federacion, Procuraduria General de la Republica. Mr. Pantoja stated that on November 14, 2007, GONZALEZ reported to him in his official capacity that her children had been abducted by GARCIA.

16.    On December 14, 2007, Mr. Pantoja faxed to your affiant a letter confirming the same.

17.    GONZALEZ stated to your affiant she believes the children are being harbored at the TARGET RESIDENCE. GONZALEZ based this belief on the fact that AQUINO has allowed her to speak to the children by telephone. GONALEZ's most recent conversation with the children occurred on December 11, 2007, at approximately 4:00 p.m.

18.    On December 12, 2007, your affiant observed and photographed two children matching the ages and sexes of the missing children playing in front of the TARGET RESIDENCE.

19.    Further, on December 14, 2007, at approximately 5:00 p.m., your affiant met with GONZALEZ at the Calexico, California, West Port of Entry, and showed her the photographs which your affiant took on December 12, 2007. GONZALEZ confirmed the photographs depicted her children.

20.    GONZALEZ stated that on December 15, 2007, AQUINO contacted her by telephone and stated he was planning to move the children from the TARGET RESIDENCE in the near future. According to GONZALEZ, AQUINO said he was going to move the children because he had become aware that she had reported the abduction to the Mexican authorities.

21.    The CS further reported that additional illegal aliens are harbored at the TARGET RESIDENCE. In particular, he/she explained that after illegal aliens cross the International Border Boundary Fence, they are harbored at the TARGET RESIDENCE where GARCIA and AQUINO reside. Additionally, the CS stated that the illegal aliens

6

enter through the west-side of the TARGET RESIDENCE and hide in an underground room located beneath the house.

22. Specifically, the CS stated that on December 11, 2007, at approximately 3:00 a.m., CS observed approximately five men climb the International Border Boundary Fence after a Border Patrol vehicle vacated a surveillance post near 1st Street in Calexico, California. According to the CS, after successfully scaling the fence, the five men crossed 1st Street, ran northward on Andrade Street, crossed 2nd Street, and entered the TARGET RESIDENCE through a small passageway on the west side of the property

23. GONZALEZ also stated GARCIA and AQUINO are harboring illegal aliens in the TARGET RESIDENCE after they successfully climb the Border Fence on 1st Street in Calexico. GONZALEZ further explained GARCIA and AQUINO conceal the illegal aliens in an underground room beneath the TARGET RESIDENCE, and GARCIA later drives them to onward locations such as Los Angeles, California.

24. Specifically, GONZALEZ stated that approximately one month ago, her cousin, Hortencia Gonzalez, paid $3,500.00 to be smuggled into the United States, harbored at the TARGET RESIDENCE, and transported to Reno, Nevada. Hortencia Gonzalez stayed at GONZALEZ's residence in Mexicali, Mexico, before being smuggled into the United States. GONZALEZ has not spoken to her cousin since she entered the United States.

VI. <u>CONCLUSION</u>

25. Based on the facts contained in this affidavit and my experience and training, I submit that there is probable cause to believe that the TARGET RESIDENCE, as more particularly described in Attachment A, contains evidence of violations of Title

8, United States Code, Section 1324 Aiding and Abating an Illegal Alien. Further, I believe the above-described property / items to be seized will be found when this warrant is served and based on the above-listed probable cause, I specifically request authority to seize the items described above and in Attachment B hereto, which is incorporated by reference herein.

26. I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

27. I have prepared this affidavit in close consultation with several federal agents with whom I work and Assistant U. S. Attorney James P. Melendres in the Southern District of California.

I declare the foregoing to be true and correct to the best of my knowledge.

Enrique Torregrosa, Special Agent
UNITED STATES Immigration and Customs Enforcement

Subscribed and sworn before me this 18th day of December, 2007.

PETER C. LEWIS
United States Magistrate Judge

8